## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 25 2019, 9:59 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael R. Fisher
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samantha M. Sumcad
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ryan Scott,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

April 25, 2019

Court of Appeals Case No.
18A-CR-2709

Appeal from the Marion Superior Court

The Honorable Sheila A. Carlisle, Judge

Trial Court Cause No.
49G03-1610-MR-40423

**Baker, Judge.**

[1] Ryan Scott appeals the sentence imposed by the trial court after he was convicted of Felony Murder and Class A Misdemeanor Carrying a Handgun Without a License, arguing that the sentence is inappropriate in light of the nature of the offenses and his character. We affirm.

## Facts

[2] On October 10, 2016, then-seventeen-year-old Lindsey Wyatt contacted her boyfriend, then-nineteen-year-old Scott, and another friend, Sierra Robinson. The threesome came up with a plan to get together that evening to "rob somebody for weed." Tr. Vol. II p. 239. Wyatt had been communicating with Steven Hunter through Facebook Messenger about purchasing a large amount of marijuana. That evening, she contacted Hunter and arranged to meet him to buy an ounce of marijuana for $400. Wyatt, Scott, and Robinson planned to rob Hunter instead of buying the marijuana.

[3] Wyatt, Scott, and Robinson began driving to Hunter's residence around 7:00 p.m. in Robinson's green Lincoln Navigator. Scott decided to bring a handgun that had been stolen from Wyatt's stepfather. On the way to the drug buy, they stopped at a convenience store so that Scott could climb in the trunk to hide from Hunter. They planned that when Wyatt saw the marijuana, she would say, "[t]his seems about right," *id.* at 87, at which point Scott would emerge from the trunk and rob Hunter.

[4] When they arrived at Hunter's residence, Hunter got into the back seat of the Navigator and they drove down the street to complete the transaction. When

they stopped, Hunter began to weigh the marijuana on a scale. Wyatt then "said what [she was] supposed to say," *id.*, and Scott climbed out of the trunk, opened the rear passenger door where Hunter was sitting, and pointed the handgun at Hunter.

[5] Hunter attempted to grab the drugs he had handed to Wyatt and started struggling with Scott. Scott struck Hunter in the head with the gun and a single gunshot went off. Scott had shot Hunter in the neck and exclaimed, "Oh my God, I accidentally killed him." *Id.* at 89.

[6] Scott pulled Hunter out of the vehicle and dragged him to the sidewalk. He took Hunter's cell phone, climbed into the back seat of the Navigator, and told Robinson to drive away, leaving Hunter's body on the side of the road. On the way back to Wyatt's residence, Scott was "taking the bullets out of the gun and tearing the phone apart and throwing them out the window." Tr. Vol. III p. 2. Scott asked Robinson to stop the vehicle on a bridge over the White River; Scott got out of the Navigator and threw the gun into the water.

[7] When they arrived back at Wyatt's residence, they began to clean up the blood inside the Navigator, which also had a bullet hole in the windshield. After trying to clean up the evidence for a few hours, Scott took all of the cleaning rags and burned them in a gravel area nearby. Scott got back into the Navigator and drove away, returning twenty minutes later on a skateboard.

[8] In the morning, someone called Wyatt's father and told him that she had observed the threesome cleaning up the Navigator the night before. Wyatt's

father called the police and then went to talk to his daughter. Ultimately, all three were arrested.

[9] On October 13, 2016, the State charged Scott with robbery resulting in serious bodily injury, carrying a handgun without a license, felony murder, and murder. Before trial, the State dismissed the robbery and murder charges. The jury trial took place on September 24-26, 2018, and at the conclusion of the trial, the jury found Scott guilty of the two remaining counts. On October 12, 2018, the trial court sentenced Scott to concurrent terms of fifty-five years for felony murder and one year for carrying a handgun without a license. The last two years of the sentence may be served on community corrections. Scott now appeals.

## Discussion and Decision

[10] Scott's sole argument on appeal is that the sentence is inappropriate in light of the nature of the offenses and his character pursuant to Indiana Appellate Rule 7(B). We must "conduct [this] review with substantial deference and give 'due consideration' to the trial court's decision—since the 'principal role of [our] review is to attempt to leaven the outliers,' and not to achieve a perceived 'correct' sentence . . . ." *Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014) (quoting *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013)) (internal citations omitted).

[11] For felony murder, Scott faced a term of forty-five to sixty-five years, with an advisory sentence of fifty-five years. Ind. Code § 35-50-2-3. The trial court

imposed the advisory term and stated that the last two years of the sentence may be served on community corrections. For Class A misdemeanor carrying a handgun without a license, Scott faced a term of up to one year, I.C. § 35-50-3-2; he received a one-year term, but it will be served concurrent with the other sentence.

[12] With respect to the nature of the offenses, Scott and his friends hatched a premeditated plan to arrange a drug deal and rob the dealer. Scott decided to bring a handgun to the robbery. He remained hidden in the trunk for the first part of the encounter, emerging with his handgun to surprise the dealer. As they struggled over the drugs, Scott struck Hunter in the head while still holding the gun. As a result, the gun fired, hitting and killing Hunter. Afterwards, Scott took Hunter's cell phone and directed Robinson to drive away, leaving Hunter's body on the side of the road.

[13] Scott attempts to shift primary responsibility for the plan and the crimes to Wyatt, but it is apparent that he was an active participant during the planning and execution of the robbery. He argues that this offense is not the worst of the worst with respect to felony murders because the murder itself was not intentional. That may be true, but the trial court recognized as much by imposing an advisory term and permitting two years of it to be served on community corrections. There is certainly nothing regarding the nature of the offenses that leads us to believe the only appropriate sentence would have been less than the advisory term.

[14] With respect to Scott's character, at the young age of nineteen, he has a juvenile adjudication for possession of illegal drugs and, as an adult, has been arrested twice since 2015. He received an alternative misdemeanor conviction for criminal recklessness and was placed on probation. He violated probation, however, and it was revoked and he served time in jail as a result. Furthermore, after acting with the premeditation and deliberation described above, Scott spent hours trying to hide the crime and evade law enforcement. He cleaned the blood from the vehicle, drove the vehicle away and left it elsewhere, and burned the rest of the evidence. He stole and dismantled Hunter's cell phone and threw the gun into the White River. And now, on appeal, he continues to try to evade responsibility, claiming that the primary bad actors were his accomplices. We do not find the sentence imposed by the trial court to be inappropriate in light of the nature of the offenses and Scott's character.

[15] The judgment of the trial court is affirmed.

Najam, J., and Robb, J., concur.